## GEORGE W. BROOKS *vs.* MARSHALL S. BROOKS.

A guardian of a minor, who in 1834 gave bond to the judge of probate, according to the then existing statutes, to account for and pay over the proceeds of his ward's real estate sold under license from the court, and also to put out the same at interest for the benefit of the minor, is not liable to his ward in an action for money had and received by him from such sale, although residing out of the commonwealth since the year 1836. The proper remedy is by proceedings in the probate court, and an action on the bond.

ASSUMPSIT for money had and received, commenced July 8, 1850. The case was submitted to this court on an agreed statement of facts, of which the most material are as follows: On the 10th January, 1832, the defendant was duly appointed by the court of probate, guardian of the plaintiff and his sister, Rebecca Brooks, both minor children of Caleb Brooks, and on the same day gave bond as such guardian, with two sureties, both of whom were dead before the plaintiff became of age. One condition of said bond was, that said guardian " at the expiration of his said guardianship, shall adjust and

settle his accounts with the judge of said court, and pay and deliver over all balances and sums of money or other property that may be found due upon his accounts, examined and allowed by the judge, unto the said minors, if then of full age."

On the 18th March, 1834, the defendant was licensed by the court of probate to sell certain real estate belonging to the plaintiff, and gave bond to the judge with sureties, " for the purpose of putting out and securing the proceeds of the sale, on interest, for the benefit of said minors." One condition of said bond was, " to account for and make payment of the proceeds of said sale, agreeably to the rules of law, and moreover shall put out and secure the same on interest for the benefit of said minors." The defendant sold the plaintiff's real estate under said license, on the 22d April, 1834, and received therefor the sum of $158.56, which had never been accounted for by him, nor paid over to the plaintiff. No inventory of his ward's property had ever been returned by the defendant into the probate court, and he had never settled any account there or elsewhere, relating to his said guardianship. The sureties on the last bond were both dead. The defendant was formerly a resident of this commonwealth, but since 1836 had resided elsewhere. The plaintiff, after he became of age, demanded the proceeds of said real estate, but no proceeding had ever been had in the probate court.

If the action can be maintained the damages are to be assessed by a jury, otherwise the plaintiff to become nonsuit.

*B. F. Hallett,* for the plaintiff.

*C. P. Curtis, Jr.* for the defendant.

DEWEY, J. The question before us is, whether this claim can be enforced in an action of *assumpsit* for money had and received.

The action of *indebitatus assumpsit* for money had and received is doubtless one of a very liberal character, and has sometimes been compared to a bill in equity, or as a remedy that properly may be resorted to, to recover money of another, which he ought not in equity and good conscience to retain. The great difficulty the plaintiff has to overcome is that arising

from the relation of these parties to each other, the nature of the office held by the defendant, and the capacity in which he received the money now demanded of him. This money, as is shown by the case made by the plaintiff, was received by the defendant as guardian of the plaintiff, under an appointment by the judge of probate, and was the avails of certain real estate sold under a license from the court of probate, authorizing him as guardian to sell certain real estate of his ward, and invest the proceeds, he first giving proper bonds to the judge of probate. Holding this fiduciary relation under a statute authority, the party takes it with all the liabilities, and all the beneficial incidents attached thereto by the statute.

When he accepts the appointment he knows that he becomes responsible for the faithful and proper discharge of his duties as such guardian. But the liability arises upon his bond to the judge of probate. This bond, thus required as security for the faithful performance of his duties, is to be enforced under the limitations provided in the statute. In the case of the bond of a guardian, it can be enforced only by a suit instituted by order of the judge of probate, and before the guardian can be charged, he must first be cited to appear before the probate court to render his account, &c. The guardian has a right to this opportunity to render his account, and to have the same adjusted by the judge of probate with all the facilities and privileges connected with the proceedings of the probate court. This right of the guardian would at once be sacrificed, if the ward, on coming of age, could institute in his own name, an action against his late guardian for money had and received in the common law courts. The principle involved is an important one, as it would apply to cases of administrators, as well as guardians, and would work a serious change in the manner of enforcing the rights of wards and heirs at law, for moneys claimed to be due them from guardians and administrators. The opinion of the court in the case of *Conant* v. *Kendall*, 21 Pick. 36, bears very strongly against the maintenance of an action for money had and received against a guardian. The form of that suit was a bill in equity, to charge a guardian for non-payment for

the debts of the ward, the guardian, having in his hands, as was alleged, abundant assets that might be made available to satisfy the same. But the court, acting on the principle that the remedy against the guardian, was solely by a suit upon his bond, refused to entertain that equitable mode of enforcing the creditor's claim, and upon the ground that another remedy existed, given by statute, by a suit upon the guardian's bond. We think this doctrine an important one and necessary to be adhered to, for the purpose of securing the rights of the guardian. It is also in conformity with a general rule of law, that the guardian having given a bond for the faithful performance of his duty as guardian, the remedy for a breach of those duties should be by an action of debt upon such bond.

The further inquiry is whether such bond was given embracing the duty of accounting for all moneys received by the guardian as avails of the sale of lands of the ward, sold by order of the judge of probate. The facts are these: In January, 1832, the defendant was appointed guardian of the plaintiff, and gave the general bond as guardian, which was required by the then existing statute. February 18, 1834, the guardian petitioned the probate court for leave to sell certain real estate of his ward, for the purpose of better investing the same, and on the 18th of March, 1834, such license was granted, and a bond was duly executed by said guardian, conditioned, among other things, " to account for and make payment of the proceeds of such sale agreeably to the rules of law, and moreover shall put out and secure the same on interest, for the benefit of said minor."

It is contended by the counsel for the plaintiff that under the decisions of this court, this bond was not one that could have been enforced for the benefit of the plaintiff. The cases alluded to are those of *Lyman* v. *Conkey,* 1 Met. 317 ; *Fay* v. *Taylor,* 11 Met. 529.

I apprehend a careful examination of these cases will show that in neither of them has there been advanced any opinion adverse to the right of the present plaintiff to enforce any claim he may have against his late guardian for not accounting for and paying over the avails of the property of the ward

which was sold under the order of the judge of probate, by a suit upon the bond given March 18, 1834.

The first of these cases, *Lyman* v. *Conkey*, was an action upon the general bond of the guardian given at the time of his appointment. The bond was given August 2, 1825, and was conformable to the provisions of the law as they existed previous to the Revised Statutes. At that period there was no provision like that of the Rev. Sts. *c.* 79, § 5, requiring the bond to be on condition to render an account of the proceeds of all real estate sold by him for investment and at the expiration of his trust pay the same over to such persons as may be lawfully entitled to enter upon the same.

The *St.* of 1830, *c.* 45, authorizing such sales to be made by license from the judge of probate, required a bond to be given by the guardian, conditioned "to observe the rules and directions of law in the sales of real estate by executors and administrators, and to account and make payment for the proceeds of said sale agreeable to the rules of law." Under this statute the guardian in that case in 1833 had obtained leave to sell the estate of his ward, and gave a bond in conformity to the statute, having before given the general bond for the faithful performance of his duties as guardian. There were different sureties in the different bonds, and the question arose as to which bond the liability attached for a default in not accounting for and paying over the avails of the sale of such real estate. It was held that the signers of the general bond were not chargeable. The court, in giving their opinion, say that by the *St.* of 1783, *c.* 38, authorizing the appointment of guardians, and requiring them to give bonds, "it is nowhere provided as among the general duties of the guardians to convert the real estate of their wards into personal for their benefit." This decision settled the question that as respects bonds of guardians given before the Revised Statutes, it was the special bond given on obtaining the license for selling the real estate, and not the general bond, that embraced the liabilities of accounting for and paying over the proceeds arising from the sales of such real estate. No doubt was suggested of the liability of the signers of the

special bond given in reference to the sale, and thus the law came to be well settled as to all bonds given by guardians before the Revised Statutes.   The case of *Fay* v. *Taylor* arose under the Revised Statutes.   It was an action upon a bond given in June, 1837, at which time the defendant was licensed to make sale of certain real estate of his ward.   The guardian had at the time of his appointment, in May, 1834, given the general bond required by the then existing statutes.   By the Revised Statutes the provisions of the general bond have been materially changed, and the liabilities of the parties to such bond greatly enlarged, and in direct terms that bond includes the liability of accounting for and paying over proceeds of the sales of real estate made by the guardian under the license of the judge of probate.   Under the Revised Statutes, the special bond required to be given on obtaining leave to sell the lands of the ward, is much in the form it was before.   In the case of *Fay* v. *Taylor*, the question was not what was the law as to such bonds given before the Revised Statutes, but how was the law in regard to such bonds given since; and the court, after much consideration, came to the opinion that by reason of the change in the law by the Revised Statutes, a special bond given on obtaining license to sell real estate, after May 1, 1836, must be held to be of a more limited character as to liability, than such bonds were prior to the Revised Statutes. This decision was distinctly stated as applicable to bonds given since the Revised Statutes.   So far as we can perceive, it left the decision in case of *Lyman* v. *Conkey* untouched, and with its full application to all bonds given prior to the Revised Statutes.   The special bond in the case before us was given in the year 1834, the general bond having been given in 1832, and therefore fell within the case of *Lyman* v. *Conkey*, holding the parties liable on the special bond, and not within the case of *Fay* v. *Taylor*, which applied to bonds given since the Revised Statutes.   It was a valid bond, and embraced the liability of accounting for and paying over the avails of the sale of real estate of the ward, and upon proper proceedings in the probate court, citing the guardian to account, &c. might have been enforced by an action of law

thereupon. The absence of the guardian from the commonwealth would not deprive the party of the power of proceeding before the probate court after proper notice and upon the order of the judge of probate.

The action of assumpsit for money had and received, although it might be more convenient and effectual for the purpose of arresting the body of a transient party, avoiding the necessary delay consequent upon the usual proceedings against a guardian in the probate court, will not lie in the present case, the only remedy being upon the special bond of the guardian given in the year 1834.          *Plaintiff nonsuit.*